UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN W. FINK,<br><br>        Plaintiff,<br>  v.<br><br>J. PHILIP KIRCHNER, and<br>FLASTER/GREENBERG P.C.,<br>        Defendants. | Civil Action No. 12-4125<br>(NLH)(KMW)<br><br>**OPINION** |

EDWARD ROBERT GROSSI
Law Office of Edward R. Grossi, LLC
8 Hillside Avenue
Suite 201
Montclair, NJ 07042

    On behalf of plaintiff

ANTHONY LONGO
PATRICK B. MINTER
CHRISTOPHER J. CAREY
Graham Curtin, PA
4 Headquarters Plaza
Po Box 1991
Morristown, NJ 07962

    On behalf of defendants

**HILLMAN**, District Judge

## I.  BACKGROUND

This case is related to two other actions previously pending before this Court, all arising out of plaintiff John Fink's loan to Advanced Logic Systems, Inc. ("ALSI"). In 2001, Fink had been a financial consultant for ALSI, but he eventually entered into a series of credit agreements with ALSI to provide working capital to the company's operations. Fink provided over $500,000 to ALSI, and in return, he received rights to purchase a certain amount of stock

in ALSI.  The financial condition of ALSI deteriorated, litigation between Fink and ALSI ensued in March 2003, and eventually the parties settled in March 2006.  After paying only half of the million dollar settlement to Fink, ALSI filed for bankruptcy in 2008.  In order to recoup the $60 million Fink believes he is owed, Fink attempted to collect the debt from EdgeLink, Inc., an entity Fink claimed was a successor-in-interest to ALSI.[1]  Fink also sought to reopen ALSI's bankruptcy in order to allow the trustee to investigate what Fink contended was a theft of ALSI's missing assets.[2]

In this lawsuit, Fink has brought claims against the lawyer, J. Phillip Kirchner, and his law firm, Flaster/Greenberg, P.C., that represented Fink in his attempts to complete his settlement agreement with ALSI, and in Fink's efforts to enforce his rights under a warrant agreement to purchase shares of ALSI stock.[3]  In defendants' efforts to assist Fink with his legal matters, Fink claims that Kirchner altered an email submitted to the arbitrator presiding over an arbitration between Fink and ALSI.  Fink claims

---

[1]Judgment was entered in EdgeLink's favor on summary judgment. That case is on appeal.  (See Fink v. EdgeLink, Civ. A. No. 09-5078 (D.N.J.).)

[2]This Court denied Fink's appeal of the bankruptcy court's order denying his request to reopen ALSI's bankruptcy.  That decision is on appeal.  (See In re Advanced Logic Systems, Inc., Civ. A. No. 12-4479 (D.N.J.).)

[3]Fink also claims that defendants assisted in his appeal of the summary judgment entered in favor of AFFLINK, which was an entity Fink sued along with ALSI in his 2003 lawsuit.

that the arbitrator's decision was affected, to Fink's detriment, by the issues concerning the altered email.  The altered email incident also lead to a still-pending New Jersey Disciplinary Review Board ethics complaint against Kirchner, in which Fink participated.

Fink also claims that the arbitrator's decision revealed to him that defendants were not working in Fink's best interests, but instead defendants were acting in the interests of the firm to maximize billing.  Relatedly, Fink claims that in defendants' attempts to collect payment for their legal fees - totaling over $650,000 - Kirchner tried to extort money from Fink.  Fink claims that when Kirchner was subpoenaed to testify in a case involving Fink and another law firm, Kirchner stated that he would only testify on Fink's behalf if Fink paid his outstanding bill to the firm.[4]

Based on these allegations, Fink claims that defendants have committed legal malpractice and fraud, breached their fiduciary duty, and inflicted intentional emotional distress on him.[5]  Defendants moved to dismiss all of Fink's claims, but during briefing, defendants withdrew their motion to dismiss Fink's legal

---

[4]Fink's complaint contains passages of what Fink claims are transcriptions of secretly recorded conversations between Fink and Kirchner.

[5]Fink also asserted a claim for unjust enrichment, but he has withdrawn that claim.

malpractice claim.[6]  Fink has opposed defendants' motion.

## II. DISCUSSION

### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

### B. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for

---

[6]Defendants explain that they withdrew that portion of their motion because of the pending DRB ethics complaint proceedings. Defendants also state that they vigorously dispute Fink's allegations and reserve the right to contest the veracity of Fink's contentions.

relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's

5

entitlement to relief.  Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element"). A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

    Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice.  S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).   If any other matters

6

outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**C.   Analysis**

Defendants argue that Fink's fraud and breach of fiduciary duty claims are duplicative of his legal malpractice claim and must be dismissed.  Defendants also argue that Fink's alleged facts to not support an intentional infliction of emotional distress claim.  Fink argues that both of defendants' arguments must be rejected.

With regard to defendants' first argument, even though some allegations may overlap, if the facts to support claims of fraud and breach of fiduciary duty are pleaded properly, they may state separate, non-duplicative claims from a legal malpractice claim. "Legal-malpractice suits are grounded in the tort of negligence," and at "the most fundamental level, the legal-malpractice action provides a remedy for negligent professional performance."  McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001) (citations omitted).[7]  In

---

[7]The elements of a cause of action for legal malpractice are (1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff.  McGrogan v. Till, 771 A.2d 1187, 1193 (N.J. 2001) (citation omitted).

7

contrast, claims that a lawyer committed fraud[8] or knowingly violated a fiduciary duty[9] are intentional torts, separate from allegations concerning the lawyer's negligent deviation from the professional standard of care.  See Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997); Stoecker v. Echevarria, 975 A.2d 975, 988 (N.J. Super. Ct. App. Div. 2009) (rejecting defendant's argument that plaintiff's fraud claim is substantially indistinguishable from the legal malpractice claim because, "[t]o prevail on her fraud claim, plaintiff need not present proof that [defendant] deviated from the professional standard of care applicable to attorneys").  "Stated plainly, an attorney who intentionally violates the duty of loyalty owed to a client commits a more egregious offense than one who negligently breaches the duty of care."  Packard-Bamberger & Co., Inc. v. Collier, 771 A.2d 1194,

---

[8]The five elements of common-law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.  Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).

[9]The essence of a fiduciary relationship is that one party places trust and confidence in another who is in a dominant or superior position.  A fiduciary relationship arises between two persons when one person is under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship.  The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care.  Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship.  McKelvey v. Pierce, 800 A.2d 840, 859 (N.J. 2002) (citations omitted).

8

1203 (N.J. 2001) (explaining that a "client's claim concerning the defendant-attorney's breach of a fiduciary duty may arise in the legal malpractice context").

In this case, Fink has lodged extensive and detailed allegations against Kirchner and his law firm. Some of his allegations concern Kirchner's deviation from the professional standard of care for attorneys. For example, Fink alleges that Kirchner failed to take certain depositions, fruitlessly pursued sanctions against ALSI, did legal work not approved by Fink, provided poor legal advice with regard to the arbitration, and submitted an altered document to the arbitrator. Other allegations relate to Kirchner's and the firm's alleged intentional conduct to defraud Fink and breach their fiduciary duty to Fink. For example, Fink alleges that, having paid $500,000 in legal fees and costs, and still owing over $150,000, Kirchner and the firm had a considerable financial incentive to continue Fink's litigation, rather than to work to prove that ALSI breached the settlement agreement or to make real efforts to consummate the settlement with ALSI. Fink also alleges that Kirchner attempted to extort money from Fink by threatening not to testify in a subpoenaed deposition in a separate matter between Fink and another law firm. Accepting these allegations, as well as all the other allegations in the detailed complaint, as true, Fink has pleaded separate claims for legal malpractice, fraud, and breach of fiduciary duty, and all three may

9

proceed.

With regard to defendants' second argument, that Fink's intentional infliction of emotional distress claim is not maintainable under Fink's alleged facts, the Court finds that Fink's factual allegations in the complaint are not sufficient to show that he has a "'plausible claim for relief.'" Fowler, 578 F.3d at 210 Id. (quoting Iqbal, 129 S. Ct. at 1950).

The elements of the common law cause of action for intentional infliction of emotional distress were set forth in Buckley v. Trenton Saving Fund Society, 111 N.J. 355 (1988):

> First, plaintiff must prove that defendant acted intentionally or recklessly.  Defendant must intend both to do the act and to produce emotional distress, or he must act recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.  Second, defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.  Third, plaintiff must prove defendant's conduct was a proximate cause of plaintiff's emotional distress.  Fourth, the emotional distress suffered by plaintiff must be so severe that no reasonable person could be expected to endure it.

DiClemente v. Jennings, 2012 WL 5629659, *8 (N.J. Super. Ct. App. Div. Nov. 16, 2012) (quoting Buckley) (internal citations and quotations omitted).

Here, Fink alleges that Kirchner's altering of legal documents submitted to the court, his questioning of Fink's character before

the court, and his threatening to not testify truthfully at a deposition in a separate matter in an attempt to extort payment from Fink, all caused him severe mental anguish and emotional distress. If accepted as true, these claims may perhaps satisfy the first and second elements of an IIED claim.  What is lacking, however, are facts to support Fink's conclusion that he suffered "severe mental anguish and emotional distress."

To prove a claim for intentional infliction of emotional distress, a plaintiff's burden of proof must meet an "elevated threshold" that is satisfied only in extreme cases.  Griffin v. Tops Appliance City, Inc., 766 A.2d 292, 296 (N.J. Super. Ct. App. Div. 2001), cert. denied, 209 N.J. 100 (2012).  Moreover, the severity of the emotional distress raises questions of both law and fact, where the court decides as a matter of law whether such emotional distress can be found, and the jury decides whether it has in fact been proved.  Buckley, 544 A.2d at 864.

As to the nature of what constitutes emotional distress "so severe that no reasonable person could be expected to endure it," courts have found that being embarrassed, a "nervous wreck," disappointed, stressed, and suffering from headaches, resentment, loss of sleep, and anxiety, to not be sufficiently severe.  See id. (citing cases).  Additionally, if a person cannot show treatment for emotional distress or an impact on the ability to function in daily life, that also weighs against a finding of severe emotional

11

distress. See, e.g., Turner v. Wong, 832 A.2d 340, 348 (N.J. Super. Ct. App. Div. 2003) (citing Aly v. Garcia, 754 A.2d 1232 (App. Div. 2000), cert. denied, 167 N.J. 87 (2001)) (explaining that the "emotional distress must be sufficiently substantial to result in either physical illness or serious psychological sequelae").

Fink has failed to plead in his complaint any facts to describe the nature of the emotional distress he has allegedly suffered. Without such facts to differentiate from his legal conclusion that he has suffered from severe emotional distress, the Court cannot assess whether he has properly stated the fourth element of a claim for IIED. See Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (explaining that stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element). Accordingly, Fink's IIED claim must be dismissed.[10]

## IV. CONCLUSION

For the reasons expressed above, defendants' motion to dismiss shall be granted as to Fink's intentional infliction of emotional distress claim, and denied on all other bases. An appropriate Order will be entered.

Date: May 8, 2013                         s/ Noel L. Hillman
At Camden, New Jersey                     NOEL L. HILLMAN, U.S.D.J.

---

[10] The Court notes that beyond a cause of action for emotional distress, New Jersey courts have long recognized emotional distress damages as a component of various intentional torts and breach of contract claims. Tarr v. Ciasulli, 853 A.2d 921, 925 (N.J. 2004).

12