```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| JOHN W. FINK, | Civil Action No. 12-4125 (NLH)(KMW) |
| Plaintiff, | |
| v. | OPINION |
| J. PHILIP KIRCHNER, and FLASTER/GREENBERG P.C., | |
| Defendants. | |

**APPEARANCES:**

JOHN W. FINK
6812 YELLOWSTONE BLVD.
APT. 2V
FOREST HILLS, NY 11375
    Appearing *pro se*

ADAM JEFFREY ADRIGNOLO
ANTHONY LONGO
CHRISTOPHER J. CAREY
WILLIAM DOBBINS TULLY, JR.
GRAHAM CURTIN, PA
4 HEADQUARTERS PLAZA
PO BOX 1991
MORRISTOWN, NJ 07962
    On behalf of defendants

**HILLMAN**, District Judge

    This case is related to three other actions filed by plaintiff, John Fink, all of which concern Fink's loan to Advanced Logic Systems, Inc. ("ALSI") in 2001. Those other cases were resolved in the defendants' favor, and the decisions

were affirmed on appeal.[1] The current matter concerns Fink's claims against his lawyer, defendant J. Philip Kirchner, and Kirchner's law firm, Flaster/Greenberg P.C., arising out of Kirchner's representation of Fink in 2006-08 on Fink's claims against ALSI that it breached its settlement agreement with Fink.

Fink claims that Kirchner lied to Fink that the judge presiding over Fink's state court suit to enforce the settlement agreement with ALSI told the parties to go to arbitration instead of litigating in court. Fink also claims that Kirchner altered an email submitted to the arbitrator presiding over an arbitration between Fink and ALSI, and that the arbitrator's decision was unfavorable to Fink as a result. The altered email incident also led to a New Jersey Disciplinary Review Board ethics complaint against Kirchner, in which Fink participated.

Fink also claims that the arbitrator's decision revealed to him that defendants were not working in Fink's best interests, but instead defendants were acting in the interests of the firm to maximize billing. Relatedly, Fink claims that in defendants' attempts to collect payment for their legal fees - totaling over

---

[1] Fink v. EdgeLink, Civ. A. No. 09-5078 (D.N.J.); In re Advanced Logic Systems, Inc., Civ. A. No. 12-4479 (D.N.J.); Fink v. Bishop, Civ. A. No. 13-3370 (D.N.J.).

$650,000 – Kirchner tried to extort money from him. Fink claims that when Kirchner was subpoenaed to testify in a case where Fink was suing another law firm over its bills, Kirchner stated that he would only testify on Fink's behalf if Fink paid his outstanding bill to Flaster/Greenberg. Based on these allegations, Fink claims in his original complaint that defendants have committed legal malpractice and fraud, and breached their fiduciary duty to him.

In April 2016, this Court resolved defendants' first motion for summary judgment, which Fink opposed because discovery had not yet been completed. The Court granted summary judgment in defendants' favor on Fink's legal malpractice claims, finding that no amount of discovery would provide facts to dispute the arbitrator's own words that the altered email had no impact on his decision. The Court also found that ALSI's bankruptcy, as well as Fink's three failed lawsuits to recoup money from ALSI or its purported successors and related parties, all demonstrate that even if Fink received the arbitration decision he desired, he would not have been able to collect on that arbitration award.

The Court denied without prejudice defendants' motion for summary judgment as to Fink's fraud and breach of fiduciary duty claims, and permitted defendants to refile their motion after

the close of discovery, which was only a few weeks away. After discovery was completed, Fink was granted leave to file a second amended complaint, which added claims for concealment of evidence and tampering of evidence relating to the altered email.

Several motions are currently pending before the Court, including Fink's motion for reconsideration of the Court's decision on his legal malpractice claim [225], and defendants' motions for summary judgment as to the other claims in Fink's complaint [223, 270].[2] For the reasons expressed below, the

---

[2] Prior to Fink filing a second amended complaint, defendants had re-filed their motion for summary judgment that had been denied without prejudice pending completion of discovery. Fink then filed his second amended complaint to add spoliation-type claims, after which defendants moved to dismiss, or obtain summary judgment, on those claims as well. In response, Fink filed a motion [266] asking the Court to direct defendants to answer his second amended complaint, and stay decision on defendants' second motion until all briefing was completed on defendants' third motion. Fink has voluntarily withdrawn this motion, ostensibly because it became moot.

Also pending is Fink's motion [278] seeking permission to use Kirchner's May 20, 2011 letter to the New Jersey District IV Ethics Committee investigator, as well as the entire investigator's report which contains the Kirchner letter, in his oppositions to defendants' motions. Defendants have opposed this motion on the basis of privilege and relevancy. The Court will grant Fink's motion nunc pro tunc as to his reference to the existence of these documents, but deny his motion as to their substance, primarily because the Court finds them irrelevant to resolution of Fink's claims based on his failure to establish the causation element for each of his claims.

Court will grant Fink's motion to reconsider its decision to grant summary judgment in favor of defendants on his legal malpractice claim, but after reconsideration, the decision will stand.  The Court will also grant defendants' motions for summary judgment in their favor on all other claims in Fink's complaint.

## DISCUSSION

### A.   Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

### B.   Standard for Summary Judgment

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving

party's favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  <u>Id.</u>  In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor."  <u>Marino v. Industrial Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004)(quoting <u>Anderson</u>, 477 U.S. at 255).

    Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.  <u>Id.</u>  Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.  <u>Anderson</u>, 477 U.S. at 256-57.  A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements.  <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 232 (3d Cir. 2001).

### C. Analysis

The Court has noted in its Opinions in Fink's other cases that have arisen out of his relationship with ALSI that it is evident Fink feels he has been continuously victimized by the players involved with the ALSI deal and his attorneys who have represented him.  The Court does not doubt Fink's emphatic belief of the wrongs he has suffered, and the Court recognizes his avid advocacy on his behalf.  The pervasive problem with Fink's allegations in all of his cases, however, is that they have been entirely speculative.  Similarly, in this case, even if the Court were to accept all of Fink's propositions as true, gaping holes exist as to causation for his alleged damages.

Fink's claims against Kirchner center on three events:  (1) Kirchner's alleged lie to Fink that the judge presiding over Fink's state court suit to enforce the settlement agreement with ALSI told the parties to go to arbitration instead of litigating in court; (2) Kirchner's alleged alteration to an email presented to the arbitrator and his alleged lies about his involvement; and (3) these two lies caused Fink to lose his claims against ALSI, thwart another settlement with ALSI, and were intended to milk Fink for unnecessary and exorbitant attorney's fees.

An essential element of Fink's legal malpractice[3], breach of fiduciary duty[4], fraud[5], and fraudulent concealment and spoliation[6] claims is causation – that the alleged harms caused Fink his damages. Fink has not demonstrated that he can meet this essential element for any of his claims.

According to Fink, he chose to discontinue his state court suit to enforce the settlement with ALSI in favor of binding

---

[3] Only where the attorney breaches his duty is he answerable in damages for losses which are proximately caused by his negligence. Lamb v. Barbour, 455 A.2d 1122, 1125 (N.J. Super. Ct. App. Div. 1982), cert. denied, 93 N.J. 297 (1983) (citations omitted).

[4] A fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship. McKelvey v. Pierce, 800 A.2d 840, 859 (N.J. 2002) (citations omitted).

[5] The five elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. Gennari v. Weichert Co. Realtors, 691 A.2d 350, 367 (N.J. 1997).

[6] The tort of fraudulent concealment may be invoked as a remedy for spoliation where the following elements exist: (1) That the defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation; (2) That the evidence was material to the litigation; (3) That plaintiff could not reasonably have obtained access to the evidence from another source; (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation; and (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed. Rosenblit v. Zimmerman, 766 A.2d 749, 758 (N.J. 2001).

arbitration because Kirchner told him that the state court judge presiding over his state court action strongly suggested that the matter should be resolved in mediation or arbitration. Fink contends that the state court judge never suggested that Fink should consider an alternative dispute resolution, and that Kirchner lied that it was the state court judge's direction, because Kirchner knew that Fink would not agree to arbitration otherwise. Fink claims that this lie cost him hundreds of thousands more in attorney's fees due to the redundancy of what had already been accomplished in the state court action.

    Fink also claims that concurrent with this state court suit, he was engaging in settlement negotiations with ALSI, which had not yet filed for bankruptcy and was worth $58 million dollars. When Kirchner submitted the altered email to the arbitrator, Fink claims that ALSI was still solvent. But, when the arbitrator noted the altered email during the arbitration proceedings, Fink claims that he lost credibility with the arbitrator, and it also destroyed his settlement talks with ALSI because ALSI saw this development as a benefit to its opposition to Fink's claims. Soon thereafter ALSI filed for bankruptcy, causing Fink to lose any hope of obtaining any additional settlement money from ALSI.

    Fink further contends that Kirchner's lie about the state

9

court judge's suggestion that Fink's case should be arbitrated is proved by billing records that do not corroborate Kirchner's statements that the judge spoke with the parties' attorneys in her robing room during Fink's two days of testimony.  Fink also contends that secretly tape-recorded conversations between Fink and Kirchner proves that Kirchner intentionally altered the email, rather than it simply being a clerical error as Kirchner claimed to the arbitrator.

Fink claims that Kirchner's first lie is legal malpractice that set off a series of events that damaged him, including unnecessary attorney's fees and the loss of a settlement with ALSI.  Fink further claims that Kirchner's second lie destroyed his credibility in the arbitration, resulting in the loss of another settlement attempt with ALSI, as well as an unfavorable decision by the arbitrator.

Even if the Court accepts as true that Kirchner lied about the impetus for arbitration and altered an email submitted to arbitration, Fink's claimed damages as a result of Kirchner's actions are too attenuated to be directly linked.

Fink states that he accepted Kirchner's advice to proceed with arbitration because he did not want to inflame the judge, and because Kirchner represented that arbitration would be less costly.  Even if the judge had not suggested arbitration, there

is no evidence that Kirchner purposely advised that Fink go to arbitration so that he could generate excessive attorney's fees. It is unknown how costly Fink's state court proceeding could have become had he declined Kirchner's advice, and there are no guarantees about how less costly an arbitration may be.

At the same time, there are numerous unknown variables as to why Fink's settlement talks with ALSI stalled. Simply because ALSI may have had a valuation of $58 million does not ensure that whichever path Fink ultimately chose – state court, arbitration, or settlement – it would have resulted in a check in Fink's hand. Indeed, Fink had instituted the state court action because ALSI had allegedly breached a prior settlement with Fink and failed to pay him all of the agreed-upon settlement amount.

With regard to the arbitration, even accepting as true that Kirchner intentionally altered the email, as the Court found in its prior Opinion, that fact did not affect the arbitrator's decision – as confirmed by the arbitrator himself. To the extent that Fink claims that the altered email also blew up any settlement with ALSI while it still remained solvent, that premise fails for the same reason as the settlement talks during the state court proceedings.

In short, even if Kirchner lied about the judge's

11

suggestion that Fink should arbitrate his claims,[7] and even if Kirchner submitted an altered document to the arbitrator,[8] Fink has not shown how those actions caused him to pay more legal fees than he otherwise would have incurred, or caused his

---

[7] Fink's proofs in this regard are threadbare. The two attorneys involved in the state court action to enforce Fink's purported settlement agreement with ALSI – Kirchner and ALSI's counsel – both testified that the state court judge recommended arbitration instead of continuing the state court action. That Kircher's billing records do not specifically identify that conversation, or that Kirchner cannot now recall the exact time that conversation took place in May 2007, does not prove Fink's belief that Kirchner lied about the judge's recommendation. Fink takes issue with the fact that the transcripts of the court hearings do not include the judge's request to meet with counsel in her robing room, and that 25 minutes is insufficient to support Kirchner's billing records that provide for "rest of the day" settlement talks and a conference with the judge. These contentions are unpersuasive. Transcripts often do not record off-the-record comments by a judge or the parties, including the judge's request to hold an off-the-record meeting with the lawyers in her chambers. Fink's premise – shown through his E-Z Pass record – that the 25 minutes between the end of court and his departure from the courthouse was not enough time for the lawyers to meet with the judge, or constitute the "rest of the day" for billing purposes, is Fink's own unsupported perception.

[8] As for the secret recordings, the excerpts from Fink's recordings of several of his conversations with Kirchner are somewhat ambiguous. While it appears from the recordings that Kirchner admitted to editing a document for strategic reasons, what the document was and why the alteration helped is unclear. Defendants argue the reference could be any number of documents created as part of the litigation and, perhaps tellingly, Fink has provided only a few small pieces of his and Kirchner's conversations that occurred on October 6, 13, and 29, 2008, without the benefit of a broader context for each excerpt. The pieces of their conversations Fink does provide do not specifically and directly show Fink asked Kirchner about the altered email.

settlement with ALSI to fall through.[9] These failures are fatal to Fink's claims.

Fink has the burden of proving his fraud, breach of fiduciary duty, and spoliation claims, in addition to the previously dismissed, but currently reconsidered, malpractice claims. Each of these claims requires sufficient evidence to demonstrate that Fink was harmed by those alleged events. The Court does not discount the serious accusation that a lawyer lied to his client and intentionally submitted an altered document to a tribunal, but the record contains only suspicion, innuendo, hypothesis, and unsupported suppositions rather than any material issues of disputed fact.

## CONCLUSION

The Court has reconsidered Fink's legal malpractice claim now that discovery is complete, as requested by Fink, but the Court finds its decision to grant summary judgment in

---

[9] In his briefing, Fink takes issue with several iterations of the same email produced in discovery, including the presence or absence of his email address "banner," and different handwriting on an exhibit tab when the change in handwriting in a series of exhibits does not make sense. He also explains how easy it is to alter such an email. These differences, and the ease in which they can be done, Fink argues, shows that Kirchner changed the email and has manufactured the same document as a cover-up for his lies. Again, even if we assume, as we do, the submission of an altered email, Fink fails to present a triable issue of causation.

13

defendants' favor on that claim remains unchanged.  The Court also finds that defendants are entitled to summary judgment on the remaining claims in Fink's complaint for fraud, breach of fiduciary duty, concealment of evidence and tampering with evidence.  Other than presenting his own beliefs, Fink has not demonstrated through competent evidence that Kirchner's alleged deceit was motivated by his desire to charge Fink with unnecessary and excessive fees, and caused Fink to lose his claims against ALSI or a settlement with ALSI.  Absent an ability to prove this essential element of each of his claims, Defendants are entitled to summary judgment.

    An appropriate Order will be entered.


Date: <u>December 20, 2016</u>      <u>s/ Noel L. Hillman</u>
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.